UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF NEW YORK
Buffalo Division

| | |
|---|---|
| **STEPHEN E. WILLIAMS,**<br><br>                              **PLAINTIFF,**<br>        **V.**<br><br>**D'YOUVILLE COLLEGE,**<br><br>                              **DEFENDANT** | **Civil Action No.**<br><br>_____<br><br>**Jury Trial Demanded** |

## COMPLAINT

Plaintiff, Stephen E. Williams, alleges as follows:

### THE PARTIES

1. The Plaintiff, is a natural person, is over forty years of age, with a place of residence in Erie County, New York.

2. The Defendant, D'Youville College, is a corporation with its principal offices at 320 Porter Avenue, Buffalo, NY 14201.

### JURISDICTION AND VENUE

3. The Court has jurisdiction over this action pursuant to 42 U.S.C. §§ 2000e-5 and 28 U.S.C. §§ 1331 and 1343.

4. Venue is properly laid within the Western District of New York pursuant to 28 U.S.C. § 1391(b) in that the Plaintiff lives in the Western District of New York, Defendant is located in the Western District of New York, and a substantial part of the acts or omissions giving rise to the claim occurred in the Western District of New York.

### EXHAUSTION OF ADMINISTRATIVE REMEDIES

1

5. Plaintiff has exhausted all administrative remedies prerequisite to bringing this claim as follows:

6. On, December 12, 2018 the Plaintiff filed a charge of discrimination with the New York State Division of Human Rights alleging unlawful discriminatory practice relating to employment in violation of Article 15 of the Executive Law of the State of New York (Human Rights Law) because of age. The matter was assigned NYSDHR Case Number 10198528.

7. The matter was cross filed with the United States Equal Employment Opportunity Commission (EEOC) and given Federal Charge Number 16GB901110.

8. On June 12, 2019 the New York State Division of Human Rights issued a Determination and Order After Investigation which found No Probable Cause. The matter was dismissed and the NYSDHR file was closed.

9. The Plaintiff timely requested EEOC review of the NYSDHR findings. The EEOC issued a Dismissal and Notice of Rights on October 21, 2019 which date results in a final date to file a claim in federal court of, January 19, 2020.

## TIMELINESS

10. When filing with a state agency the Plaintiff has three hundred (300) days to bring a claim when using a state agency 42 U.S.C. 2000e.

11. The Plaintiff's DHR Complaint filed on December 12, 2018 alleged that the most recent discriminatory act occurred on September 7, 2018. This gives a latest date to file a claim with EEOC or with the New York Division of Human Rights of July 4, 2019. The "look back" period extends back from the filing date to February 5, 2018.

## FACTUAL BACKGROUND

2

12. The Plaintiff was hired by the Respondent in August, 1994. The Plaintiff held the position of Tenured Professor of Education until September 7, 2018 when Defendant, Dr. Clemo, abolished the Education Department, eliminated its programs and fired the Plaintiff.

13. According to the Defendant, the Plaintiff was fired because the Education Department and its programs were officially eliminated.

14. Shortly after the Plaintiff was discharged the Defendant recruited new students, enrolled them and implemented in January of 2019 classes in the "new" Masters of Curriculum and Instruction (C&I) Education Program staffed with cost-saving, low-salaried, adjunct faculty and with low level salaried administrators. The Defendant, in fact, simply implemented the recently abolished C&I Program that the Plaintiff and Education faculty had developed in 2013 and received New York State Education Department (NYSED) approval for and had been taught since 2017. The Defendant's so-called "new" C&I Program duplicates the original curriculum including identical course titles and code numbers. The Defendant claims of offering a new or modified C&I Program is untenable. Having dissolved the Education Department and its members in September 2018, the Defendant lacked the requisite staff, expertise and time to create anew a C&I Program, have it vetted by no less than two requisite college committees, and then submit to NYSED and get approval by January 2019. Reinstating and marketing the original C&I Program and staffing it with low-cost adjuncts bereft of fringe benefits and unqualified low level salaried administrators, openly contradicts the Defendant's rationale for firing the senior Plaintiff.

15. The original C&I Program abides despite the Defendant's August 2018 claim on the College's website that the Education Department—along with its programs and faculty --

was being abolished. Simply put, the Defendant fired the senior Plaintiff by falsely claiming that the Education Department and its programs were being officially abolished.

16. In August 2019, the Defendant offered EDU 622 ("Exceptional Learners") consonant with its "new" C&I Program. To save money, the Defendant assigned a low-cost adjunct with no fringe benefits to teach EDU 622 – a course designed by a faculty member in the Education Program who was also terminated and taught by the Plaintiff at least five times between 2011 and 2016. As a cost saving matter, the Defendant opted to staff EDU 622 and other courses in the C&I Program with part-time, low-cost adjuncts and lower salaried, younger (under age 40) junior administrators rather than full-time, senior, tenured, high-cost faculty. To justify its cost-saving decision and fire the Plaintiff, the Defendant had to offer a "new" C&I Program. Even if it was true that the program offered was "new" which it was not, it is still a flagrant violation of the AAUP CBA which does not allow the retrenchment of existing faculty if the administration claims an education program is newly developed.

17. The administrator tasked with recruiting an applicant for a position as adjunct professor to teach EDU 622 online illicitly offered the syllabus of another faculty in the education department who was also terminated by the Defendant for the same reasons. The applicant, aware that using someone else's syllabus without permission constituted a copyright violation, withdrew her candidacy. It is unknown who was subsequently recruited to teach EDU 622 scheduled to be taught from August 19, 2019 – October 6, 2019.

18. Several instructors teaching in the "new" C&I Program include two D'Youville College junior administrators who are both under the age of forty. One of these junior administrators taught the EDU 656 Philosophical and Social Foundations course created and taught many times by the Plaintiff. After the Plaintiff was discharged this junior administrator,

4

had access to all of the Plaintiff's course materials on D'Youville College's LMS.  Further, this junior administrator possessed neither the specific academic preparation nor the many years of university level instruction as the Plaintiff.  Hiring a host of low-cost adjuncts without fringe-benefits and tasking two junior administrators to teach in the C&I Program teaching clearly evidences the Defendant's cost-saving motive to fire the Plaintiff.

19. D'Youville College faculty is represented by a chapter of the American Association of University Professors (AAUP) union. The Collective Bargaining Agreement (CBA) between these two entities states the following: "In the event a program or position which has been reduced or eliminated is reactivated or reinstated within a period of two (2) years, the faculty member or librarian whose services were terminated because of the reduction or elimination shall be offered the position he/she formerly held."  Further, this two-year period was extended to four years in a Memorandum of Understanding, signed by the Defendant and the DYC AAUP President.

20. A Memorandum of Agreement between the Defendant and the AAUP states: "In the event the Education Department is reinstituted any time prior to the beginning of the 2022-2023 academic year, the members of the Education Department Faculty shall have a right to be rehired" Accordingly, the Defendant failed to abide by (1) The Collective Bargaining Agreement between the AAUP and the College's Board of Trustees and (2) The Memorandum of Understanding between the AAUP and the Defendant.

21. In discharging the Plaintiff, the Defendant violated the Collective Bargaining Agreement and long-standing College norms and procedures regarding termination of tenured faculty. President Clemo refused to provide the Union with requisite documents related to retrenchment and severance as mandated by the CBA. Furthermore, President Clemo denied the

Union and the Plaintiff access not only to the Board of Trustees but also to any participation in the retrenchment process.

22. President Clemo never consulted the Plaintiff nor her Education colleagues regarding reassignment of the Plaintiff as mandated by the CBA. Simply stated, retaining and reassigning tenured faculty proved too costly based on their seniority. In her termination letter to the Plaintiff, President Clemo states, "There are no other, suitable, available positions at the College." Actually, there were many suitable and available positions the Plaintiff could have filled, and courses to teach which the Plaintiff was not only qualified to teach but had taught numerous times prior to his discharge. The Plaintiff supplied the Defendant with his written vitae which listed all of the related experience and background related to filling these positions or courses. However, reassignment was never mentioned, discussed, or offered to the Plaintiff. Positions the Plaintiff could easily have done were often filled and held by younger (under 40 years of age) and lower salaried individuals.

23. When the AAUP Chapter Union President (Dr. Marge Goodman) learned that the Defendant continued to offer the original C&I Program created by the Plaintiff and his fellow faculty, Dr. Goodman insisted that the Defendant immediately reinstate the Plaintiff and other Education faculty members. According to a statement by the VP for Academic Affairs (Dr. Mimi Steadman), the Defendant could not bear the cost of reinstating the senior and tenured Plaintiff and her colleagues. In a subsequent meeting with the Defendant the same remark was repeated to Dr. Goodman. The Defendant fired the Plaintiff because his seniority or age commanded a high salary. In this case age discrimination and cost-savings are inseparably linked.

6

24. The Defendant claimed that the Plaintiff was fired and the Education Department was dissolved because of low-enrollment. However, this claim is patently false. In the Fall of 2016, the Board of Trustees and the college administration made the unilateral decision, as only they could, to cease enrolling students in order to rebuild its Education program. Enrollment in the Education Program was officially suspended during the Department's rebuilding stage between 2016-2018. Dr. Cemo in her dismissal letter to the Plaintiff cites "low enrollments dating back to before 2012" as the grounds for his dismissal, a statement which is also patently false. The Spring 2018 semester – by virtue of the Board of Trustee's decision to suspend enrollment during the rebuild phase -- was the only time the C&I Program, and the Education program as a whole, had no students.

25. When the Board of Trustees made this decision they promised not to retrench the Education Department. Instead the Board gave a direct order and mandate to rebuild anew the entire education program to match the shifting directions of teacher education programs for the foreseeable future. The deadline to complete this rebuilding was the Fall of 2020.

26. During its rebuilding stage, the Plaintiff and other Department members, at the orders of the Board of Trustees and the Administration to engage in a rebuild of the Education Program, researched scores of thriving education programs at competitive institutions. This aggregated and explicated data was furnished to Dr. Clemo with a host of viable models and options to enhance enrollment and augment tuition revenue. Inexplicably, President Clemo ignored these viable and potentially lucrative models and options. In fact, President Clemo and the Vice President for Academic Affairs (Dr. Mimi Steadman) never met with Department members to consider these proposals. President Clemo also failed to seek the requisite New York State Education Department approval to implement four innovative and low-cost graduate

certificate programs developed by the Plaintiff and his colleagues that would have been available to incoming students by Spring 2018. Seemingly, the Defendant had no interest in rebuilding the Education curriculum or offering innovative certificate programs because President Clemo had no intention of retaining the senior Plaintiff and his colleagues as evidenced by her act of terminating him and his fellow colleagues. This is made evident by the Defendant's offering the MSC and I program developed by the Plaintiff program and staffing it with low paid adjuncts and salaried junior administrators.

27. President Clemo waited until mid-July of 2018 to convene an extraordinary meeting of the Board of Trustees (BOT) to abolish the Education Department whose members were currently on summer semester break. President Clemo terminated the Plaintiff by email in late August.  This late termination effectively denied the Plaintiff any reasonable opportunity to seek an academic position elsewhere.  Traditionally, faculty, tenured and not tenured, have been notified five to twelve months prior to being dismissed.  Here, however, the Defendant notified the Plaintiff -- a senior, tenured, distinguished faculty member with over twenty-six (26) years of service – only ten days prior to his termination.

28. And, as noted above the Board decision of 2018 was directly against its previous order of 2016 regarding rebuilding the education program and the promise not to retrench.

29. The Defendant's failure to provide adequate notice of termination – in breach of the Collective Bargaining Agreement -- prevented the Plaintiff from securing a teaching position at another institution.

30. When the Plaintiff and his colleagues were fired in late August 2018, they were engaged in designing an online Master's Degree in Curriculum and Instruction for students in India at the behest of Dr Clemo and V.P. Joggeshwar Das. This initiative constituted Dr.

Clemo's underlying plan to fire the Plaintiff.  However, Dr. Clemo failed to consider the complex issues associated with marketing her affordable and viable online C&I Program for Indian graduate students. If the India Master's Degree Program had been properly researched, marketed, priced and implemented by the Defendant and her administrative staff, the Indian students could have easily enrolled in Fall 2018. The India Program – offering a Master's in Education – rests on C&I curricular platform originally developed by the Plaintiff and his colleagues developed in 2013.

      31.    The Plaintiff is a highly educated, experienced and accomplished professor, scholar, consultant and mentor. In addition to earning an education doctorate in Educational Learning Theory, the Plaintiff holds a Master's in Education in Educational Counseling and Assessment, and a Bachelor of Arts Honors degree in English Literature. During the Plaintiff's tenure at the College, he authored numerous publications in top tiered peer-reviewed journals, book reviews and individual book chapters.  Plaintiff has presented at over 40 national and international conferences, including Oxford University, Brown University, the University of Madrid, the University of Dublin, and University of Vilnius to name a few.  Plaintiff was also an invited lecturer at an international symposium on Bullying in Vilnius Lithuania.  He was an invited Summer Lecturer at the Pedagogical University in Lithuania for which he received several Citations of Meritorious Service from the Lithuanian Government, one of which was presented at a state dinner by the Lithuanian President.  For his research and work on Anti-Bullying in the Baltics and Scandinavia he was invited by the Norwegian Ambassador as an honored guest to a state reception in Vilnius.  Since the Plaintiff's college affiliation is always cited in the above matters these distinctions also accrued to the college.  The Plaintiff also significantly benefitted the college with his ongoing research activities including the co-

9

authorship and participation in the three year, three million dollar federally funded education Gear-Up Grant.  His extensive research, scholarship and commitment to the profession earned him the Education Department faculty award and the distinction of being one of a very few members of the college faculty to be promoted to full professor two years ahead of schedule. From 1996 through 1997 the Plaintiff was the Co-director of the Mentoring program in the Education Department. From 1998-2000 acted as the co-director of the graduate program in education.

32. All of the Plaintiff's employment evaluations were consistently excellent.

33. The plaintiff was appointed as one of two college Education Faculty to hold a position from 2006 through 2012 on a state wide educational initiative program on special education services funded and operated by a grant through Syracuse University.

34. The Plaintiff co-founded and operated a multimillion-dollar consortium of special education and rehabilitation service programs in five states for a period of ten years.  Further, Plaintiff was a Nationally Certified Rehabilitation Counselor and would be the perfect resource to have assisted Health-related faculty at D'Youville deliver quality teaching and learning.

35. The Plaintiff was the founder and administrative director of a rehabilitation and education service network for over ten years. As such he has demonstrable administrative skills, and expertise in program and grant development, program assessment and evaluation. These skills would be a significant asset, and perennially usable to the college administration in all of its mandatory assessment and evaluation activities required for national accreditation and program development.

**FIRST CAUSE OF ACTION**
**Violation of the Age Discrimination in Employment Act**

36.     Plaintiff repeats each and every allegation set forth herein in preceding paragraphs as though fully set forth herein.

37.     The *prima facie* elements of discrimination claims under the ADEA are "not onerous."[1]  A plaintiff may make out a *prima facie* case with either circumstantial or direct evidence of discriminatory intent. [2] Circumstantial evidence is by far the most common.  A plaintiff making out a *prima facie* case of discrimination with circumstantial evidence must 1) identify a protected class, 2) identify an adverse action, 3) show that a) the Plaintiff was qualified for the job and b) that the work still being performed.[3]

**Element 1) Protected Classes**

38.     Dr. Williams is over the age of forty.

**Element 2) Adverse Actions**

39.     Dr. Williams was issued a notice of dismissal from his position with the Defendant on September 7, 2018.

40.     The dismissal did not follow the rules and practices of the Defendant.  Further the dismissal was in violation of the existing Collective Bargaining Agreement.

41.     Dr. Williams was well qualified to assume suitable administrative and teaching positions at the College in accordance with the Collective Bargaining Agreement.

42.     Dr. Williams was not offered any other position in violation of the Collective Bargaining Agreement.

43.     There are untenured, younger, lower-salaried and less experienced individuals who occupy positions the Plaintiff could have competently assumed.

---

[1] Texas Dept. of Community Affairs v Burdine, 450 US 248, 253 [1981]
[2] Swierkiewicz v. Sorema N. A., 534 U.S. 506, 511-12, 122 S. Ct. 992, 997, 152 L. Ed. 2d 1 (2002), *citing Trans World Airlines, Inc. v. Thurston,* 469 U.S. 111, 121 (1985).
[3] McDonnell Douglas Corp. v Green, 411 US 792, 802 [1973], *see also Young v. UPS*, 135 S.Ct. 1338 (2015).

11

**Element 3 (a) Plaintiff was Qualified for the Jobs Held and Applied For**

44.     Dr. Williams -- an exceptionally well qualified professor -- had the seniority, education and experience to assume a host of other faculty or administrative positions at the College.

**Element 3 (b) Work was Still Being Performed**

45.     The courses that Dr. Williams developed and taught are currently being marketed and taught by low-cost adjuncts and low-level salaried administrators at the behest of the Defendant.

**Additional Evidence of Age Bias**

46.     Individuals who are younger, lower-salaried, less qualified and less experienced than the Plaintiff have been appointed to teaching and administrative positions.

**WHEREFORE**, Plaintiff respectfully requests from this Court the following relief:

A.     That the Defendant compensate the Plaintiff for lost wages and associated benefits including any effects on the Plaintiff' retirement benefits based on the Plaintiff's rights under the Age Discrimination in Employment Act;

B.     That the Defendant pay the Defendant $300,000 in damages for the stress, anxiety and humiliation associated with Defendant's unlawful dismissal;

C.     That the Defendant reimburse the Plaintiff's for all medical and health insurance costs resulting from his unlawful dismissal including any and all diagnostic analysis, treatment and therapy, and follow up therapy.

D.     That the Defendant to pay the Plaintiff the costs and disbursements of this court action, together with reasonable attorneys' fees;

E. That the Defendant provide the Plaintiff with any additional damages that this Court deems just and equitable.

## DEMAND FOR JURY TRIAL

Pursuant to Rule 38 of the Federal Rules of Civil Procedure, Plaintiff demands a trial by jury of all issues properly trial by jury in this action.

Dated: January 18, 2020

Respectfully Submitted,
Plaintiff
By His Attorneys

| /s/ Lindy Korn | /s/ Charles L. Miller, II |
|---|---|
| LINDY KORN, ESQ. | CHARLES L. MILLER, II, ESQ. |
| Attorney for Plaintiff | Attorney for Plaintiff |
| Law Office of Lindy Korn, PLLC | Law Office of Lindy Korn, PLLC |
| Electric Tower, Ninth Floor | Electric Tower, Ninth Floor |
| 535 Washington Street | 535 Washington Street |
| Buffalo, New York 14203 | Buffalo, New York 14203 |
| 716-856-5676 | 716-856-5676 |
| 716-507-8475 (facsimile) | 716-507-8475 (facsimile) |
| E-Mail: lkorn@lkorn-law.com | E-mail: cmiller@lkorn-law.com |